DECISION
This matter is before the court on cross-motions for summary judgment. The parties filed a statement of Stipulated Facts on February 29, 2008. Oral argument was held May 6, 2008. This matter is now ready for decision.
 I. STATEMENT OF FACTS
Plaintiff is an entity formed "in August 2002 for the sole purpose of developing the Waterside Condominiums (the `Project')," an 84 unit residential building. (Stip Facts 8, 4.) Plaintiff's Managing Member, Steven Morrison (Morrison), "called the Multnomah County Assessor's Office" on three different dates seeking information to aid him in completing a financial pro forma for the Project, specifically the property tax amount. Morrison's telephone call "was routed to" James Nagae (Nagae), who is "a Commercial Property Appraisal Program Supervisor for Defendant." (Stip Facts 10, 11.) "Morrison does not recall word for word the exact questions asked by him or the statements made by Nagae, but he does recall the substance of those conversations. * * * Nagae has no recollection of the conversations." (Stip Fact 11.)
"During the first conversation," which occurred "on or about November 21, 2003," Morrison "quizzed Nagae on how the property would be valued and taxed during the *Page 2 
construction process." (Stip Facts 12, 13.) Morrison reported the following exchange:
 "Nagae explained that the property would be valued during construction and that such value would change as construction progressed. Morrison was incredulous over Nagae's explanation. Nagae's explanation made no sense to Morrison who could not understand why property tax is imposed on the subject property even though it could not be sold because it was under construction. Morrison asked Nagae why property tax is imposed in such circumstances. Nagae responded that that is the way it always works."
(Id.) (Citations omitted.)
Morrison's second conversation occurred "on or about August 17, 2004." (Stip Fact 15.) Because he "was incredulous over the idea that taxes would be imposed on the subject property prior to completion of construction. Morrison tried to convince Nagae that what Morrison was being told could not be correct. * * * Nagae responded that his explanation was correct; that the subject property has value and is assessed even if construction is not yet complete." (Stip Fact 16.) (Citations omitted.)
Morrison's third conversation occurred "on or about October 2005." (Stip Fact 18.) This conversation "was substantively similar to the prior two conversations between Morrison and Nagae," because Morrison was still puzzled that "taxes would be imposed on the subject property prior to completion of construction." (Stip Fact 19.)
Morrison's handwritten notes for all three conversations were submitted. (Stip Facts 14, 17, 20.)
Plaintiff alleges that the court "should grant" Plaintiff's "Motion for Summary Judgment and Require the Multnomah County Tax Assessor's Office to apply the ORS 307.330 tax exemption to Hayden Island's property despite the late filing." (Ptf's Mot for Summ J and Memo in Support (Motion) at 6.) Defendant alleges that Plaintiff "cannot establish equitable estoppel on the facts of this case, * * * and the Assessor's denial of Plaintiff's Application as untimely filed was proper." (Def's Mot for Summ J (Cross-Motion) at 8.) *Page 3 
 II. ANALYSIS
The parties agree that Plaintiff failed to submit an application for exemption by the required due date of April 1, 2006. The question before the court is whether Defendant should be estopped from denying Plaintiff's exemption from taxation under ORS 307.330.[1]
The parties' cross motions for summary judgment are made under Tax Court Rule 47C which states:
 "The court shall grant the motion if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have the burden of persuasion at trial."
The court's review of the material facts occurs in the context of the governing law.
In the area of taxation, estoppel is granted in rare instances[2]
when the following three elements have been proven: (1) Defendant's conduct mislead Plaintiff; (2) Plaintiff had a good faith reliance on the conduct; and (3) Plaintiff was injured by its reliance on Defendant's conduct. Sayles v. Dept. of Rev., 13 OTR 324, 328 (1995). With respect to the first element, "taxpayers can claim estoppel against governmental taxing authorities only `when there is proof positive that the collector has misinformed the individual taxpayer.'" Webb v. Dept.of Rev., (Webb I) 18 OTR 381, 384 (2005), quoting Johnson v. TaxCommission, 248 Or 460, 463, 435 P2d 302 (1967). This court has concluded that "proof positive" is a "stringent proof requirement."Id. *Page 4 
Taxpayers have prevailed when there was proof of "incorrect or misleading documents sent by taxing authorities to the taxpayer," or proof positive of a taxing authority's "misleading course of conduct."Id., citations omitted. However, there is "only one[3] case in which an Oregon court has considered oral communication to constitute a part of `proof positive.'" Webb v. Dept. of Rev., (Webb II) 19 OTR 20, 25
(2006). See Pilgrim Turkey Packers v. Dept. of Rev., 261 Or 305, 310,493 P2d 1372 (1972) (finding "`proof positive' of misleading conduct in the ambiguous form alone, but held that the taxpayer's claim of estoppel was made "even stronger" by the evidence of oral misinformation.")
In this case, Plaintiff alleges that it was mislead when Nagae stated that the partially constructed condominiums "would be valued and taxed based on the value assigned to the partial construction" even though Plaintiff's "property was subject to a tax exemption under ORS 307.330." (Ptf's Motion at 4.) Plaintiff alleges that it relied on oral communications. To meet the standard of proof positive, "[t]axpayers who rely on oral communications * * * must provide * * * detailed memoranda that are written contemporaneously with the communications and that corroborate the taxpayer's recollection of them" or describe "the communications in great detail, including the nature, date, and time of each conversation; the names and relationships to the parties of all those who took part in each conversation; those persons' knowledge of taxpayer's situation and of the relevant law; and the exact statements made as well as their form and intended meaning." Webb II, 19 OTR at 26.
Plaintiff offered Morrison's handwritten notes. (Stip Facts at 14, 17, 20.) The notes were short and lacking "in great detail." Webb II,19 OTR at 26. Each of the notes has a first or a first *Page 5 
and last name of the person Morrison spoke to. Two of the handwritten notes have a date. None of the notes state the time, and "relationships to the parties of all those who took part in each conversation."Id. In the November 21, 2003, note, there is one "exact statement" attributed to "he" (Nagae): "He says that's always true" which is followed by "[v]alue there even if only partially done." (Stip Fact 14.) Two notes do not offer any reference to "those persons' [Nagae's] knowledge of taxpayer's situation and of the relevant law." WebbII, 19 OTR at 26. The note dated "8/17/04" appears to describe the subject property, but there is no notation that this information was told to "Jim Nagi." (Stip Fact 17.) Morrison asserted that "[d]uring each conversation [he] informed Nagae that [his] questions pertained to a condominium project that was under construction." (Ptf's Ex A at 1.) Nagae stated unequivocally that he "did not * * * recall having talked with any representative," including Morrison, "of the Hayden Island Condominiums at any time." (Nagae Depo at 32.) Nagae further stated that he "was not aware of the project" and did not "know what it entailed." (Id. at 36.)
Plaintiff's evidence can be characterized as "[m]ere testimony that the" county assessor's representative "orally misguided taxpayer." "[G]enerally, by itself," "mere testimony" is "insufficient to show `proof positive' that the taxpayer was misled." Webb II, 19 OTR at 24. (Citation omitted.) Plaintiff supplements its written testimony with three handwritten notes. The words on the notes support Morrison's statement that he was seeking sufficient information to determine an amount to place on the property tax line of a pro forma project analysis.
The court does not know the exact questions asked by Morrison. Morrison's notes state that all his questions focused on how property under construction is taxed. Each handwritten note suggests that Morrison asked how a building under construction was taxed.[4] None of *Page 6 
Morrison's notes state that Nagae knew the building under construction was a commercial facility. Assuming for purposes of discussion that Nagae knew the building under construction was a qualifying commercial facility, [5] his responses were not incorrect or misleading, but rather incomplete. ORS 307.340 states that qualifying commercial property "shall be listed for ad valorem property taxation, but the assessor shall cancel the assessment for any assessment year upon receipt of sufficient documentary proof that the property meets all of the conditions contained in ORS 307.330.[6] " Morrison's notes state that Nagae's response follows ORS 307.340 which requires a property, including a qualifying commercial property, to be valued and that value to be placed on the tax rolls. Morrison's notes make no reference to any discussion of how the property can be exempt from taxation. Even though Nagae could have volunteered information about how a commercial facility under construction can be exempt from taxation (ORS 307.330), there is no record that he did.
Morrison's questions were focused on gathering property tax information to complete a pro forma analysis. Plaintiff asks this court to conclude that Nagae's quoted statement "that's always true" preceded by "valued during construction" was misleading because the assessment could be canceled. As previously stated, all property including qualifying commercial facilities are "listed for ad valorem property taxation." ORS 307.340. For questions asked in the context of Morrison's pro forma analysis, Nagae's response was not misleading. With no undisputed *Page 7 
evidence that Nagae knew that the building under construction was a commercial facility, the court cannot conclude that Nagae intentionally mislead Morrison.
Morrison is frequently described as "incredulous over the idea that taxes would be imposed on the subject property prior to completion of construction." (Stip Facts 13, 16, 19.) Morrison's notes show that he equated taxable value with the inability to sell partially completed units. (Stip Facts 14, 17.) Morrison's notes show his lack of knowledge of Oregon's property tax system, but his lack of knowledge does not shift the burden to Defendant to broaden a discussion of value to exemption. There is nothing in Morrison's notes to suggest that Morrison asked how the property could be exempt from taxation. According to Morrison's notes, Nagae answered the questions that were asked.
Plaintiff "offers no proof of incorrect or misleading documents."Webb II, 19 OTR at 24. The facts of this case are different than the situations in Schellin v. Dept. of Rev., 15 OTR 126 (2000), Hoyt StreetProperties LLC v. Dept. of Rev. (Hoyt), 18 OTR 313 (2005), and Sidhu v.Dept. of Rev., 19 OTR 207 (2007). In Schellin, taxpayer testified that "she was orally misled by employees at the assessor's office on two separate occasions." Schellin, 15 OTR at 135. The court held that "such oral evidence insufficient to show `proof positive' that taxpayer had been misled." Id. It went on to state that "[w]ritten materials however, are given greater weight than oral testimony." Id. Similarly inHoyt and Sidhu, taxpayers received documents (notices of adjustment) that clearly stated that their appeals must be filed within 90 days from the date of the notice. Both taxpayers filed appeals beyond the 90 days and argued that they were mislead by representatives of the Department of Revenue. The court concluded that neither taxpayer could "offer proof positive that the department `affirmatively and expressly' told them to disregard the appeal period." Sidhu, 19 OTR at 213-214. In this case, Plaintiff did not receive a written document from Defendant or its employee, Nagae; it relied solely on verbal responses to *Page 8 
Morrison's questions asked on three different occasions about how to estimate property taxes for a pro forma financial statement.
Defendant alleges that Plaintiff "held the burden to look to the published law for additional assistance" and therefore its estoppel claim should fail. (Def's Cross-Motion at 10.) Defendant misstates the law. In Webb I, the court discussed recent cases stating that "the Supreme Court will deny estoppel claims whenever a government agency misstates the law." Webb I, 18 OTR at 387, citing Committee inOpposition v. Oregon Emergency Correc., 309 Or 678, 792 P2d 1203 (1990) (Committee); and Dept. of Transportation v. Hewett ProfessionalGroup, 321 Or 118, 895 P2d 755 (1995) (Hewett). The court concluded that even though "Committee and Hewett may indicate a shift in the law that affects taxing authorities as well as other government agencies, * * * this court will wait for confirmation before abandoning Johnson andPilgrim Turkey, as well as its own precedent" and noted that "`access to the pertinent law was available to the parties in each instance but the court appears to have waived' that element." Id. at 387 — 388, citingCascade Manor, Inc. et al v. Dept. of Rev., 5 OTR 482, 488 (1974) andMontessori School of Eugene v. Lane County Assessor, 16 OTR 198, 204-05
(2000). The Webb I decision is followed by this court.
 II. CONCLUSION
Based on the evidence presented, the court concludes that Plaintiff failed to establish proof positive that Defendant mislead Plaintiff when its employee, Nagae, responded to questions about how to value property under construction and estimate property taxes but did not explain that a qualifying commercial property may be exempt from taxation. Because Plaintiff failed to prove that Defendant's conduct mislead it, estoppel cannot be granted. Now, therefore, *Page 9 
IT IS THE DECISION OF THIS COURT that Plaintiff's Motion for Summary Judgment is denied; and
IT IS FURTHER DECIDED that Defendant's cross motion for summary judgment is granted.
Dated this ____ day of August 2008.
[1] All references to the Oregon Revised Statutes (ORS) are to year 2005.
[2] "The policy of efficient and effective tax collection makes the doctrine of rare application." Johnson, 248 Or at 463.
[3] Two such cases have been decided in the Magistrate Division of the Oregon Tax Court: Weseman v. Hood River County Assessor, TC-MD No 060723D (Decision, Mar 2, 2007); and Semler v. Multnomah CountyAssessor, TC-MD No 000058F (Decision, May 24, 2000.)
[4] Note dated "11/21/03:" "Value there even if only partially done; " note dated "8/17/04:" "Bldg charged as constructed; " and third undated note: "Taxes based on work Completed." (Stip Facts 14, 17, 20.)
[5] The parties state that three telephone calls were "routed" to Nagae without explanation how it was determined that the call should be routed to Nagae. If Morrison was asked to briefly state his question and then his call was "routed" to the person qualified to answer it, it is likely Nagae, who is the commercial property supervisor, should have known that the subject property was a commercial facility.
[6] ORS 307.330 provides that if certain conditions are met a qualifying commercial facility under construction "is exempt from taxation for each assessment year of not more than two consecutive years." *Page 1